THE PEOPLE OF PUERTO RICO, Petitioner, *v.* SUPERIOR COURT of PUERTO RICO, PONCE PART, EDWIN MELÉNDEZ GRILLASCA, JUDGE, Respondent; CRISTINO RIVAS MERCADO, Intervener.

No. O-67-179.    Decided June 28, 1968.

*J. B. Fernández Badillo, Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for petitioner. *Pascual F. Lanauze Ortiz* and *Luis Verges Lanausse* for intervener.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The prosecuting attorney filed an information against Cristino Rivas Mercado for the offense of forgery, § 413 of the Penal Code, 33 L.P.R.A. § 1641, in which he was charged that in December 1964 he ". . . falsely passed, uttered, and endorsed check number 146514 . . . payable to the order of Luis Guillermo Burgos . . . which check was cashed by the aforementioned defendant . . . knowing . . . that the signature of Luis Guillermo Burgos had been forged by him and that it had been falsely endorsed without the consent or permission of María Negrón Vega widow of Sierra, nor of Luis Guillermo Burgos, defendant being aware of the falsity, with the intent . . . of defrauding, as he did defraud, Luis Guillermo Burgos and/or the International General Electric of Ponce, and/or the Government of the Commonwealth of Puerto Rico. . . ."

Check No. 146514 issued on September 12, 1964 by the Commonwealth of Puerto Rico, in favor of Luis Guillermo Burgos (People's Exh. 1), was offered and admitted in evidence at the trial. There is a first endorsement on the back of the check with the name of Luis Guillermo Burgos, and a second endorsement with the name of María Vega Negrón widow of Sierra, both written with ball-point pen, as well as a stamped order for deposit to the account of International General Electric Puerto Rico, Inc.

While the special agent Luis A. Segarra was testifying, the incident which gave rise to the present appeal concerning the admission of some specimens of handwriting taken by said witness from the defendant occurred. It appears from the partial transcript appearing in the record that in the

388

course of the investigation that was being made in San Juan, agent Segarra was asked to take a specimen of Cristino Rivas Mercado's handwriting who was "among the persons who could be suspects." In fulfilling the commission the agent visited the defendant at his home and, without giving him any warning, he asked him to write the names Luis Guillermo Burgos and María Vega widow of Sierra. He obtained it. In fact, People's Exhibit 2 consists of three sheets of ruled notebook paper which contain the names of Luis Guillermo Burgos, 16 times in pencil, and 5 in ball-point pen, and of María Vega widow of Sierra, 16 times in ball-point pen. On the third sheet there is a note in a different handwriting, which says: "11/8/65 Hr. 1:30 P.M. These specimens of handwriting were taken from Cristino Rivas Mercado in his house in 449 Callejón Fagot of Cantera, Ponce, on November 8, 1965, by the S.A. Luis A. Segarra, 1498, of the Detective of Ponce." Below, there is defendant's signature.

When the calligraphic exemplars were presented in evidence, the respondent judge refused to admit them on the ground that "the handwriting is the equivalent of an oral confession of guilt" because it leads to the production of an expert testimony on its verification with the forged signatures,[1] and elaborating on that point he added that "it is practically a testimony which defendant gave because it results in providing testimonial evidence against himself." At the request of the People, we issued a writ of certiorari to review this decision.

(1) The nature of the offense and of the objected evidence—exemplars of the signatures allegedly forged in prosecution for forgery—leads us to conclude that because in this particular case a critical stage of the investigation is

---

[1] Among the witnesses in the back of the information, there appears Rafael Viñas Negrón, who is identified as the examiner of exhibits of the State Police.

involved, the suspect had a right to be warned of his right to assistance of counsel. As outlined in *United States* v. *Wade*, 388 U.S. 218 (1967), the governing criterion to determine the need of aid of counsel in the stages prior to the trial is the very possibility that a substantial prejudice could be caused to defendant. It is necessary for that purpose to canvass the circumstances which surround the confrontation which has taken place and the fruits thereof. It is very difficult to conceive a situation more impregnated with risk for a person accused of the offense of forgery than the one which is presented in this case because the activity of the officers in charge of the investigation sought to obtain the evidence which was necessary par excellence to achieve a conviction. It is enough to compare the exemplars obtained with the signatures at the back of the check, which was already presented and admitted in evidence, to prove what we have said. Under those circumstances, it was indispensable to warn the suspect of his right to legal assistance. Since it is precisely the offense of forgery which is being dealt with, whose essential probatory element is the identity of the handwriting attributed to the defendant, it could be affirmed that there is practically no difference from the incriminating oral admissions to which we referred in adopting the rule of *Rivera Escuté* v. *Delgado, Warden*, 92 P.R.R. 746 (1965).

The Solicitor General relies exclusively on expressions of the opinion rendered in *Gilbert* v. *California*, 388 U.S. 263 (1967).[2] But the rule of the precarious majority which is

---

[2] Gilbert was convicted of armed robbery in a bank of Alhambra, California, and of the murder of a police officer who tried to avoid the robbery. He had been arrested in Philadelphia by FBI agents and he had refused to answer questions about the Alhambra robbery. He later did answer questions about some Philadelphia robberies in which the robber used a handwritten note demanding that the money be handed over to him. During the investigation, at the request of the agents who were interrogating him, he gave some handwriting exemplars. They were presented and admitted in evidence at the trial for the Alhambra robbery.

After rejecting the allegation that the taking of the exemplars

established in said case is not to be applied in an inflexible manner, without knowing the facts and particular circumstances which surround each different situation. Therefore, in our case, the evidence par excellence to establish the offense of forgery is involved; in *Gilbert,* it was the evidence obtained with relation to the investigation for the prosecution of other offenses different from the one in which exemplars were used.

In *United States* v. *Wade,* 388 U.S. 218 (1967), the need of the presence of counsel was sustained to aid a suspect who, for the purposes of identification, is requested to participate in a lineup because said confrontation "is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial." In fact, as Mr. Justice Fortas states in his dissenting opinion in *Gilbert,* we do not find any rational ground to establish a distinction between this situation and the taking of a calligraphic exemplar to be used in a forgery proceeding. Certainly, no cross-examination can correct the prejudices caused by the delivery of an incriminating calligraphic exemplar.

It is necessary to explain that the district attorney expressly admitted that "Cristino Rivas was among the persons who could be a suspect," (Tr. Ev. 1) and, therefore,

---

violates the right of not incriminating himself, it is said in the majority opinion:

"The taking of the exemplars was not a 'critical' stage of the criminal proceedings entitling petitioner to the assistance of counsel. Putting aside the fact that the exemplars were taken before the indictment and appointment of counsel, there is minimal risk that the absence of counsel might derogate from his right to a fair trial. [Citation.] If, for some reason, an unrepresentative exemplar is taken, this can be brought out and corrected through the adversary process at trial since the accused can make an unlimited number of additional exemplars for analysis and comparison by government and defense handwriting experts. Thus, 'the accused has the opportunity for a meaningful confrontation of the [State's] case at trial through the ordinary processes of cross-examination of the [State's] expert [handwriting] witnesses and the presentation of the evidence of his own [handwriting] experts.' [Citation.]"

the investigation partook of an accusatory nature. The limitation which is sought to be made in the dissenting opinion lacks importance due to the fact that Rivas was not the *only* suspect. The language of *Rivera Escuté* v. *Delgado, Warden, supra,* which is invoked to that effect, does not have the restrictive scope attributed to it, and it must be considered in the light of the facts which surrounded that case.

(2) Finally, we specifically state that we justify the dismissal of the evidence offered, not on the grounds that the right against self-incrimination is violated, but because of the lack of aid of counsel in a critical stage prior to the forgery prosecution.

We share the same concern of the dissenting opinion as to the protection which the community deserves against the growing occurrence of crimes. But we are unable to perceive the apocalyptic vision contemplated as a result of our decision of such a limited effect to a simple case of forgery. Certainly, these problems of the rights of the defendants deserve to be weighed on the judicial level with serenity and caution, devoid of any sense of hysteria and panic.

The writ issued will be quashed.

Mr. Justice Blanco Lugo delivered a separate opinion. Mr. Justice Santana Becerra concurs in the result in a separate opinion. Mr. Justice Ramírez Bages dissented in an opinion in which Mr. Justice Torres Rigual concurs. Mr. Justice Rigau did not participate herein.

—O—

Separate opinion of MR. JUSTICE BLANCO LUGO.

San Juan, Puerto Rico, June 28, 1968

When the doctrine of exclusion of confessions obtained from a defendant or suspect who is under police custody, or under the custody of another proper authority, while he is

interrogated to obtain incriminatory statements, because of not warning him of his rights of not incriminating himself and of aid of counsel in said act, is adopted, *Rivera Escuté* v. *Delgado, Warden*, 92 P.R.R. 746 (1965), we cannot see how the equal protection could be denied when we are dealing not with the confession or admissions, but with other nontestimonial evidence given by the defendant which, as to its effects, is equally prejudicial and incriminating. Any distinction sought to be made is purely artificial and sophistic; it is at variance with reason and logic because the same grounds for exclusion are present in both situations.

I am aware that the contrary position may find support, as a general proposition, in expressions of the Federal Supreme Court in *Schmerber* v. *California*, 384 U.S. 757 (1966), and *Gilbert* v. *California*, 388 U.S. 263 (1967). However, I believe that under the cardinal obligation of giving content to similar guarantees sanctioned by the Constitution of the Commonwealth of Puerto Rico—the right not to incriminate himself, to aid of counsel, and to be prosecuted within the norms of the due process of law—said interpretation does not deserve our affirmance.

Because of the additional ground that it was proper to warn the defendant before taking the calligraphic exemplars, of his right not to incriminate himself, I would sustain the exclusion of the evidence presented.

—O—

Mr. Justice Santana Becerra concurring in the result.

San Juan, Puerto Rico, June 28, 1968

I concur in the result. With what appears in the record, I am not in a position to state that the situation in this case with respect to the aid of counsel fits squarely in *Rivera Escuté* v. *Delgado, Warden*, 92 P.R.R. 746 (1965), and in *Escobedo* v. *Illinois*, 378 U.S. 478 (1964).

Under the specific circumstances of this proceeding, in which the forgery of another person's signature is the offense charged, to compel the defendant to sign that person's name was tantamount to extracting from him a testimony. To make him write that name various times was a testimony, and not a mere handwriting exemplar. Compare: *Gilbert* v. *California*, 388 U.S. 263, 265 (1967); *Schmerber* v. *California*, 384 U.S. 757, 763 (1966); *United States* v. *Wade*, 388 U.S. 218, 221 (1967).

I do not sustain that the taking of a handwriting exemplar, with or without warning, or without aid of counsel, violates the constitutional guarantee against the self-incriminating testimony. But under the circumstances of this case, the defendant was forced to *testify* against himself because what he was forced to write constitutes the commission of the very offense he is charged with.

Even if he had aid of counsel or not at that moment, the defendant should have been warned of his right not to incriminate himself, and of the fact that what he would write could be used against him as any other testimony. Without said warnings, the constitutional guarantee which Art. II, § 11 of the Constitution of the Commonwealth of Puerto Rico offers, was violated.[1]

I concur in that the evidence was properly excluded by the trial court.

—O—

MR. JUSTICE RAMÍREZ BAGES, with whom MR. JUSTICE TORRES RIGUAL concurs, dissenting.

San Juan, Puerto Rico, June 28, 1968

I dissent because I conclude that the calligraphic exemplars were not obtained in this case at a critical stage of

---

[1] "No person shall be compelled in any criminal case to be a witness against himself. . . ."

the proceedings and, therefore, the intervener did not have to be warned of his right to legal aid and of his right not to incriminate himself.

In this case the intervener was not under custody when said exemplars were obtained from him, for they were obtained at his own home. It cannot be concluded either that at that moment "the investigation shifts to accusatory and is focused on a particular suspect," as we said in *Rivera Escuté* v. *Delgado, Warden*, 92 P.R.R. 746, 759, 760 (1965), for in asking a police officer to take a specimen of the intervener's handwriting the latter was "among the persons who could be the suspect" so that the investigation had not yet progressed to the point of having the suspicion fall upon the intervener specifically.

*United States* v. *Wade*, 388 U.S. 218 (1967), is clearly distinguishable. In said case the judgment was reversed because the identification of the defendant as author of a crime was admitted in evidence because the witness identified him as said author when he was pointed out to him before the trial in a lineup which took place in the courtroom. That was performed subsequent to the filing of the information, for the purposes of identification, without previous warning, and in the absence of defendant's counsel. In this case, the court specifically concluded that defendant Wade's participation in the lineup of suspects was not a violation of his privilege against self-incrimination. The decision in *Wade, supra*, was based on the numerous risks and controlling factors which exist in the identification of suspects in lineups which can seriously and even crucially affect the holding of a fair trial. Obviously, said risks and factors do not exist in obtaining calligraphic exemplars, for, as the Supreme Court of the United States said in *Gilbert* v. *California*, 388 U.S. 263 (1967), citing *Wade, supra*, "The taking of the exemplars was not a 'critical' stage of the criminal proceedings entitling petitioner to the assistance of counsel . . .

there is minimal risk that the absence of counsel might derogate from his right to a fair trial." The court stated that if the exemplar is not representative, it can be brought out and corrected through the adversary process at the trial, since defendant can write other exemplars to be analyzed by the experts, and as it was stated in *Wade, supra,* "the accused has the opportunity for a meaningful confrontation of the [State's] case at trial through the ordinary processes of cross-examination of the [State's] expert [handwriting] witnesses and the presentation of the evidence of his own [handwriting] experts."

The majority opinion in this case is cause of great concern to us because it not only lacks the proper grounds, but in disregarding the holding laid down in *Wade, supra* and *Gilbert, supra,* and on the contrary, in laying down rules beyond the limits so far accepted with respect to the right of legal aid, it alters, as to that point, the reasonable balance which should exist between the individual rights and the rights of the community between the rights of those who commit all kinds of crimes, and of those who behave within the prevailing rules of law. Society should protect itself adequately against every illegal conduct which, because of its nature and unwholesome rhythm of growth, tends to undermine its most profound foundations. Judge Warren E. Burger, *Crime and Criminal Law Today,* 28 *Rev. C. Abo. P.R.* 157 (Nov. 1967). This becomes even more evident in a country like Puerto Rico, still in process of development, with limited resources which have not permitted it to develop, within the necessary amplitude and extent, its educational needs, social orientation, and police security. If in a country with almost unlimited resources, such as the United States, its highest court has deemed it fair to fix the limit to the individual right established in *Gilbert, supra,* we can hardly allow ourselves the luxury of ignoring it and not taking heed of the significant implication of the majority opinion in that case. Our social

and ambient conditions demand our acting with great caution when confronted with these situations, and to consider, with greater reason, not only the constitutional rights of the individual, but also the rights of a society in which the individual must act and behave within a juridical system adopted and prescribed by that society for better community intercourse, greater protection of the individuals within it, and for the very survival of said society.